# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION AT COLUMBUS

| | | |
|---|---|---|
| JEROME B. WILLIAMS | : | Civil Action No. C-2-01-681 |
| | : | |
| Plaintiff, | : | Judge Marbley |
| | : | Magistrate Judge Abel |
| v. | : | |
| | : | |
| GENERAL ELECTRIC COMPANY, | : | **MEMORANDUM IN SUPPORT OF** |
| et al. | : | **DEFENDANT GENERAL ELECTRIC** |
| | : | **COMPANY'S PRETRIAL MOTION** |
| Defendants. | : | |

## I.  ARGUMENT

### A.  Under Sixth Circuit Precedent, Plaintiff's ADEA Claim Is Time Barred As a Matter of Law.

In their Motion for Summary Judgment, Defendants asserted that Plaintiff's ADEA claim was untimely because Plaintiff failed to file an EEOC charge within 300 days of October 24, 2000, the date that Plaintiff was informed in a letter from his supervisor, Thomas Bilia, that his position would be eliminated.  In its Order, however, the Court held that Plaintiff's ADEA claim accrued for purposes of the 300-day limitations period on December 26, 2000, the date of Plaintiff's scheduled lay-off.  (Order at 7).  The Court reasoned that the notice given to Plaintiff that his position would be eliminated, which he received on October 24, 2000, was insufficient to begin the 300-day period because it left open the possibility of continued employment if another position within the Company was located.  (Id.).

On virtually identical facts, the Sixth Circuit Court of Appeals in Janikowski v. Bendix Corp., 823 F.2d 945, 947-48 (6th Cir. 1987) held that the proper date for determining the accrual of a plaintiff's cause of action is the date the employee is first notified of the elimination of his

position, even if the notification expressly provides the possibility of continued employment within the Company. In <u>Janikowski</u>, the employer, Bendix, implemented a reduction in force following a decline in business. <u>Id.</u> at 946. On September 4, 1980, plaintiff's supervisor informed plaintiff his employment would terminate approximately a year later on September 30, 1981. On November 18, 1980, Bendix sent a letter to the plaintiff confirming that his position would be eliminated ten months later on September 30, 1981. <u>Id.</u> In the letter, plaintiff was told that "**if, on the date of your termination from the Tax Department, you have not secured a position elsewhere within Bendix, you will be terminated from employment**." <u>Id.</u> (emphasis added). In fact, the plaintiff was encouraged to seek employment both within and without Bendix. <u>Id.</u> Plaintiff was unable to locate a new position in the Company and requested an extension of his termination date. He was granted an extension on a month-to-month basis and then was advised in mid-November 1981 (over a year after his initial notification and commencement of job search) that his termination would occur on November 30, 1981. When the plaintiff subsequently filed an age discrimination charge against Bendix, the company filed a Motion to Dismiss based on the plaintiff's failure to file his EEOC claim within 300 days of the initial notice that his position would be eliminated. <u>Id.</u> at 946-47. The district court granted defendant's motion, and on appeal, the Sixth Circuit Court of Appeals noted that:

> Janikowski argues that the alleged acts of discrimination occurred the day he was actually discharged, November 30, 1981. The district court held the alleged unlawful practice occurred on September 4, 1980, the day Janikowski received notification of his eventual termination. If plaintiff's cause of action accrued when Bendix notified him they were terminating him, his ADEA claim was untimely . . . .

<u>Id.</u> at 947. The Sixth Circuit agreed with both the employer and the district court, finding the plaintiff's claim time-barred. <u>Id.</u> The court stated:

2

> A long line of cases, including two Supreme Court cases, <u>Chardon v. Fernandez</u>, 454 U.S. 6 (1981); <u>Delaware State College v. Ricks</u>, 449 U.S. 250 (1980), hold that a plaintiff's cause of action under the ADEA accrues when he receives a notice of termination, not when his employment actually ceases. In <u>Chardon</u>, the Supreme Court reiterated that "the proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful." Further, "mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." To avoid the preclusive effects of <u>Ricks</u> and <u>Chardon</u>, Janikowski argues that the notification he received was not definite and final. He points out that while there was no doubt he would leave the Tax Department, Bendix left open the possibility he could continue working elsewhere in the Company.

<u>Id.</u> The court, however, expressly rejected this argument. The court held:

> <u>Ricks</u> has determined this issue in Bendix's favor. . . . <u>Ricks</u> held that the cause of action accrued when Ricks received notice he would be terminated, regardless of whether the letter was equivocal in holding out the possibility that he might receive tenure and thereby avoid termination.

<u>Id.</u>; <u>see also</u> <u>Kessler v. Bd. of Regents</u>, 738 F.2d 751, 755 (6th Cir. 1984) (noting that "although this letter [notifying the plaintiff of his termination] is somewhat ambiguous with respect to its finality, . . . [t]he letter's ambiguous wording is not sufficient, however, to prevent [the plaintiff's] cause of action from accruing [on the date thereof]"); <u>Lacroix v. Tennessee Dep't of Transp.</u>, 229 F.3d 1152, 2000 WL 1140764, at *2 (6th Cir. August 8, 2000) (unreported, attached hereto as Exh. A) (Citing <u>Ricks</u> and <u>Janikowski</u> and finding that the plaintiff's ADEA claim accrued when he was notified of his termination, rather than the actual date of his termination). In conclusion, the Sixth Circuit held that "**Plaintiff's seeking a new position within the Company before his last day of work ended did not toll the period of limitations.**" <u>Id.</u> (emphasis added).

The Sixth Circuit reaffirmed its holding in <u>Janikowski</u> in <u>Damsel v. Fisher</u>, 114 F.3d 1187, 1997 WL 328607 (6th Cir. June 13, 1997) (unreported, attached hereto as Exh. B). <u>Id.</u> at

*2-3. In Damsel, the plaintiff was an Assistant Attorney General who registered as a candidate in a primary Congressional election. Id. at *1. Because of pressure from the plaintiff's opposition, the plaintiff's superior told him on June 30, 1993, that if he did not withdraw from the upcoming primary, he would be terminated on August 1, 1993. Id. The plaintiff did not withdraw his candidacy, and he was terminated on July 30, 1993. Id. Subsequently, the plaintiff brought claims alleging Constitutional violations of his right to run for political office and the First Amendment. Id. at *2. The court found his claim time-barred and held that the plaintiff's cause of action accrued when he received the ultimatum from his superior, not on his actual date of termination. Id. at *3. The court reviewed both Ricks and Chardon, and then stated:

> Even closer to the mark is the Sixth Circuit case of Janikowski v. Bendix Corp. . . . **Janikowski, like Damsel, argued that his cause of action accrued much later than the date on which he received notice because the notification he received was not definite and final, given the possibility that he could continue working elsewhere in Bendix. Applying Ricks and Chardon, this Court rejected Janikowski's argument. . . .** Under the foregoing precedent, it is clear that Damsel's claim accrued when Damsel knew or had reason to know that he would be terminated for exercising his First Amendment rights. We find Damsel knew of this on June 30, 1993, when Attorney General Fisher issued the ultimatum and Damsel responded that he would not withdraw. Therefore, the district court correctly found that Damsel filed his complaint after the two-year statute of limitations had run.

Id. at *2-3 (emphasis added).

The facts herein are identical to Janikowski as on October 24, 2000, Plaintiff was given advance written notice that his position would be eliminated effective December 26, 2000, but that he could still seek employment within the Company. (Plaintiff's Dep. Exh. 3). Specifically, Bilia's October 24, 2000 letter expressly stated that it "is with great regret that I must inform you of our decision to eliminate your position" and that "beginning today, your primary focus should be on obtaining a new position." Furthermore, Bilia indicated that Plaintiff would "be placed on

4

layoff effective December 26, 2000 if an alternative placement opportunity cannot be identified within GE" and encouraged Plaintiff "to explore employment opportunities both within and outside the Company." (Plaintiff's Dep. Exh. 3). Similarly, in <u>Janikowski</u>, on September 4, 1980, Plaintiff's supervisor informed him that his employment would be terminated approximately one year later on September 30, 1981. The supervisor further indicated that "if, on the date of your termination from the Tax Department, you have not secured a position elsewhere within Bendix, you will be terminated from employment" and he encouraged plaintiff to seek employment both inside and outside Bendix. 823 F.3d at 946. Thus, the messages conveyed in both cases are virtually identical. Therefore, just as in <u>Janikowski,</u> Plaintiff's cause of action accrued on the date of the notification (October 24, 2000), rather than the date of his scheduled layoff (December 26, 2000). Because this date undeniably is more than 300 days from the time Plaintiff filed his EEOC intake questionnaire on September 5, 2001 [316 days], his claim is time-barred. <u>See Janikowski</u>, 823 F.2d at 947 ("A plaintiff must file a claim of ADEA violation with the EEOC within 300 days after the alleged unlawful practice occurred.").

As the Supreme Court recently stated in <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 122 S.Ct. 2061 (2002), the time limitations of federal discrimination statutes should be strictly enforced. <u>Id.</u> at 108-09. The Supreme Court stated:

> [S]trict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law. . . . By choosing what are obviously quite short deadlines, Congress clearly intended to encourage the prompt processing of all charges of employment discrimination.

<u>Id.</u> (quoting <u>Mohasco Corp. v. Silver</u>, 477 U.S. 807, 100 S.Ct. 2486 (1980)). Consequently, Defendant GE is entitled to judgment as a matter of law on Plaintiff's ADEA Claim.

**B.**     **Plaintiff's Claims Under O.R.C. Chapter 4112 Fail as a Matter of Law Because He was not Replaced by Someone Outside the Protected Class.**

As the Court held in its decision on summary judgment, to establish a prima facie case of age discrimination under O.R.C. § 4112, Plaintiff must prove the following four elements: (1) that he was a member of the statutorily protected class, (2) that he was discharged, (3) that he was qualified for the position, and (4) that he was replaced by, or that his discharge permitted the retention of, a person **not belonging in the protected class**. See Barker v. Scovill, Inc., 6 Ohio St.3d 146, 148, 451 N.E.2d 807, 809 (1983) (emphasis added). As this Court has recognized, the fourth element of the prima facie case under ORC Chapter 4112 differs from the fourth element under the ADEA. See, e.g., McIntosh v. Stanley-Bostitch, Inc., 82 F. Supp. 2d 775, 786 (S.D. Ohio 2000) (noting the distinction between Ohio and federal law with respect to the fourth element of the prima facie case of age discrimination and stating: "Since this Court is required to defer to the State Court's interpretation of Ohio law, this Court will adopt the prima facie elements of age discrimination under Ohio law as established by Barker"); Pasko v. American Nat'l Can Co., 998 F. Supp. 807, 810-11 (N.D. Ohio 1998) (distinguishing Ohio law from federal law and applying the elements stated in Barker).

In applying the standards set forth in Barker, courts, including this Court, have refused to find a prima facie case of age discrimination where either the plaintiff's replacement or the person who is retained following the plaintiff's discharge is within the protected class, i.e., over 40 years old. See McIntosh, 82 F. Supp. 2d at 787-88 (refusing to find a prima facie case of age discrimination under Ohio law where the 53-year-old plaintiff was replaced by a 43-year-old individual); Pasko, 998 F. Supp. at 811 (refusing to find a prima facie case of age discrimination under Ohio law where the 57-year-old plaintiff was replaced by a 40-year-old individual); Dobozy v. Gentek Building Products, Inc., 2000 WL 1739230, at *5 (Ohio Ct. App. Nov. 22,

6

2000) (unreported, attached hereto as Exh. C) (refusing to find a prima facie case of age discrimination under Ohio law where the 46-year-old plaintiff was replaced by a 44-year-old individual).

Here, Plaintiff's position was affected by a reduction in force that resulted in the elimination of one out of three Transmission Leader positions within Thomas Bilia's region. Plaintiff was scheduled for layoff while the other two Transmission Leaders, David Allen and David Koloski, were retained. (Bilia Dep. at 120-22; Bilia Dep. Exh. 10). Thus, the layoff of Plaintiff's position permitted the retention of David Allen and David Koloski, both of whom were over 40 years of age. Mr. Allen was 44 years old, and Mr. Koloski was 53 years old at the time of the reduction in force. (Affidavit of Bradford I. Greene, Jr., attached hereto as Exh. D, at ¶¶ 3-4). As both individuals were within the protected class, Plaintiff is unable to establish a prima facie case of age discrimination under Ohio law. Therefore, Defendant GE is entitled to judgment as a matter of law on Plaintiff's ORC Chapter 4112 age discrimination claim.

## II.  CONCLUSION

For the reasons contained herein, Defendant GE, the only Defendant remaining in this case, is entitled to judgment as a matter of law on Plaintiff's ADEA and ORC Chapter 4112 age discrimination claims, the only claims remaining in this matter.

Respectfully submitted,

_Charles M. Roesch_

Charles M. Roesch (0013307)
Trina M. Walton (0070469)
DINSMORE & SHOHL LLP
1900 Chemed Center
255 E. Fifth Street
Cincinnati, OH 45202
(513) 977-8200

Attorneys for Defendants,
The General Electric Company et al.

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing was served by regular U.S. Mail upon Russell Kelm and Brian Garvine, Attorneys for Plaintiff, Law offices of Russell A. Kelm, 37 W. Broad Street, Suite 860, Columbus, Ohio 43215, this 27th day of August, 2003.

_Charles M. Roesch_

934112v2

229 F.3d 1152 (Table)
**Unpublished Disposition**

Page 1

**(Cite as: 229 F.3d 1152, 2000 WL 1140764 (6th Cir.(Tenn.)))**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA6 Rule 28 and FI CTA6 IOP 206 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Sixth Circuit.

Charles LACROIX, Plaintiff-Appellant,
v.
TENNESSEE DEPARTMENT OF
TRANSPORTATION, Defendant-Appellee.

No. 99-5847.

Aug. 8, 2000.

Before SUHRHEINRICH and DAUGHTREY, Circuit Judges; WEBER, District Judge. [FN*]

FN* The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation.

**1 Charles LaCroix, through counsel, appeals a district court order granting summary judgment in favor of the defendant and dismissing his employment discrimination complaint filed pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2; the Age Discrimination in Employment Act, 29 U.S.C. § 623(a); and Tennessee state law. The parties have expressly waived oral argument pursuant to Rule 34(j)(3), Rules of the Sixth Circuit, and this panel unanimously agrees that oral argument is not needed in this case. Fed. R.App. P. 34(a).

On September 9, 1998, LaCroix, a white, 63-year-old male, filed a complaint against the Tennessee Department of Transportation ("TDOT"). LaCroix alleged that on September 12, 1997, his employment as a highway maintenance worker was terminated based upon his race and age, in violation of federal and state law. LaCroix also alleged that his termination was based upon his complaints regarding the condition of TDOT vehicles and TDOT's alleged improper use of pesticides, in violation of the Tennessee Whistle Blower Statute, Tenn.Code Ann. § 50-1-304 (Lexis Law Publishing 1999). LaCroix sought monetary, injunctive, and equitable relief.

TDOT filed a motion for summary judgment, to which LaCroix responded. On May 5, 1999, a magistrate judge filed a report recommending dismissal of LaCroix's federal law claims as time-barred and dismissal of his state law claims for lack of subject matter jurisdiction. Over LaCroix's objections, the district court approved and adopted the magistrate judge's report and recommendation, granted TDOT's motion for summary judgment, and dismissed LaCroix's federal claims with prejudice and his state law claims without prejudice. LaCroix has filed a timely appeal.

We review the district court's grant of summary judgment de novo. See EEOC v. Northwest Airlines, Inc., 188 F.3d 695, 701 (6th Cir.1999); Smith v. Ameritech, 129 F.3d 857, 863 (6th Cir.1997). Summary judgment is appropriate when the evidence presented shows " 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ' Northwest Airlines, 188 F.3d at 701 (quoting Fed.R.Civ.P. 56(c)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Both Title VII and the ADEA require a plaintiff alleging employment discrimination on the basis of race and age to file a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") before bringing suit in federal court. See 29 U.S.C. § 626(d) (ADEA); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798 (1973) (Title VII); Janikowski v.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



DEFENDANT'S
EXHIBIT
A

229 F.3d 1152 (Table)
**Unpublished Disposition**

Page 2

**(Cite as: 229 F.3d 1152, 2000 WL 1140764 (6th Cir.(Tenn.)))**

*Bendix Corp.*, 823 F.2d 945, 947 (6th Cir.1987) (ADEA). Because the State of Tennessee has a state or local agency to which complaints of discrimination can be referred, *see Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 194-97 (6th Cir.1995), LaCroix had 300 days from notification of his termination in which to file a charge of discrimination with the EEOC. *See* 29 U.S.C. § 626(d)(2); 42 U.S.C. § 2000e-5(e)(1).

**\*\*2** The 180 or 300-day time period is not jurisdictional, but is akin to a statute of limitations and "is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Ruiz v. Shelby County Sheriff's Dep't*, 725 F.2d 388, 390 (6th Cir.1984). Under the doctrine of equitable tolling, a plaintiff may sue after the statute of limitations has expired if, through no fault or lack of diligence on his part, he was prevented from filing suit in a timely manner due to inequitable circumstances. *See Seitzinger v. Reading Hosp. and Med. Ctr.*, 165 F.3d 236, 240 (3d Cir.1999); *EEOC v. Kentucky State Police Dep't*, 80 F.3d 1086, 1094-95 (6th Cir.1996). The doctrine is appropriately applied when the plaintiff was prevented from asserting his rights in some extraordinary way or other exceptional circumstances warrant its application. *See Mosley v. Pena*, 100 F.3d 1515, 1518 (10th Cir.1996); *Wilson v. Grumman Ohio Corp.*, 815 F.2d 26, 28 (6th Cir.1987).

LaCroix did not timely file a charge of discrimination with the EEOC prior to filing suit in federal court. LaCroix was notified of his termination on September 3, 1997, and the time period for filing a discrimination charge with the EEOC began on that date. *See Delaware State College v. Ricks*, 449 U.S. 250, 259 (1980); *Janikowski*, 823 F.2d at 947. LaCroix filed a charge of discrimination with the EEOC on July 16, 1998, 316 days after he received notice of his termination.

Upon review, we conclude that the district court properly granted summary judgment in favor of TDOT, as LaCroix did not establish any exceptional circumstances which would toll the applicable 300-day time limitation. *See Mosley*, 100 F.3d at 1518; *Wilson*, 815 F.2d at 28. LaCroix knew of the 300-day time limitation before it expired, his

subjective belief that he had filed a charge of discrimination on June 8, 1998, was neither reasonable nor alleged to be induced by any actions or statements made by the EEOC, and his contention that he received a charge number on June 8, 1998, is not supported by the record.

Accordingly, the district court's order is affirmed. Rules of the Sixth Circuit.

229 F.3d 1152 (Table), 2000 WL 1140764 (6th Cir.(Tenn.)) Unpublished Disposition

**END OF DOCUMENT**

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

114 F.3d 1187 (Table)
**Unpublished Disposition**

Page 1

(Cite as: 114 F.3d 1187, 1997 WL 328607 (6th Cir.(Ohio)))

**C**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA6 Rule 28 and FI CTA6 IOP 206 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Sixth Circuit.

William DAMSEL, Plaintiff-Appellant,
v.
Lee FISHER: Kathleen O'Malley,
Defendants-Appellees.

No. 96-3622.

June 13, 1997.

On Appeal from the United States District Court for the Southern District of Ohio.

BEFORE: KEITH, SUHRHEINRICH, and SILER, Circuit Judges.

PER CURIAM.

**1 William Damsel appeals the summary judgment for Defendants in his civil rights action under 42 U.S.C. §§ 1983, 1985(3), and 1988. Damsel alleged that Defendants violated his First and Fourteenth Amendment rights when they terminated his employment with the Office of the Attorney General of Ohio because of his candidacy for the United States House of Representatives. We AFFIRM.

I.

William Damsel was an Assistant Attorney General from 1986 to July, 1993. Lee Fisher at all times

relevant to this case was the duly elected Attorney General of the State of Ohio, and Kathleen O'Malley was his Chief of Staff and First Assistant Attorney General (collectively "Defendants"). [FN1]

> FN1. Damsel also named as defendants Jane Doe and John Doe, unknown individuals who conspired and acted in concert with Defendants to violate Damsel's constitutional rights.

On April 14, 1993, Damsel filed as a candidate for the May 1994 primary election in the 18th Congressional District in Ohio. During May and June of 1993, Damsel campaigned during non-working hours.

On June 22, 1993, Chief of Staff O'Malley advised Damsel that Attorney General Fisher was "getting a lot of heat" from supporters of the incumbent congressional representative. On June 23, 1993, O'Malley told Damsel the he must either withdraw his candidacy or terminate his employment effective August 1, 1993. On June 24, 1993, Damsel informed O'Malley that he would not withdraw from the race, and O'Malley responded that Damsel would be fired effective August 1, 1993. When Damsel asked O'Malley to reconsider her decision, O'Malley replied that the decision was Fisher's, and only he could reconsider it.

On June 30, 1993, Fisher told Damsel to withdraw, or his last day of work would be August 1, 1993. Damsel responded that he was not going to withdraw his candidacy. On July 30, 1993, O'Malley notified Damsel in a memorandum that his appointment as an assistant attorney general would expire at the close of business on July 30, 1993.

Damsel filed a three-count complaint in federal district court on July 27, 1995, alleging that: (1) Defendants violated Damsel's First and Fourteenth Amendment rights to run for political office and express his political views; (2) Defendants violated Damsel's substantive and procedural due process rights by making false public statements which accused Damsel of lying about the circumstances of

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works


DEFENDANT'S EXHIBIT
B

114 F.3d 1187 (Table)
**Unpublished Disposition**

Page 2

**(Cite as: 114 F.3d 1187, 1997 WL 328607 (6th Cir.(Ohio)))**

his discharge; and (3) Defendants, John Doe, and Jane Doe conspired to deprive Damsel of equal protection of the laws by destroying, losing or otherwise failing to maintain public records, in violation of the Ohio law.

The district court granted Defendants' motion for summary judgment on May 14, 1995, based entirely on Damsel's failure to meet the statute of limitations as to his first cause of action. The district court's order did not address Damsel's second and third causes of action. Damsel appeals.

II.

On appeal, Damsel alleges that the district court erred in granting Defendants' motion for summary judgment by determining that the statute of limitations commenced on June 24, 1993. Damsel further alleges that the district court erred in not recognizing that his complaint asserted three separate claims, each with different accrual dates.

**\*\*2** We review de novo the district court's grant of a motion for summary judgment. *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir.1996), *cert. denied,* 117 S.Ct. 683 (1997). "This Court must affirm the district court only if it determines that the pleadings, affidavits, and other submissions show 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Id.* (quoting Fed.R.Civ.P. 56(c)). "A decision below must be affirmed if correct for any reason, including a reason not considered by the lower court." *Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.,* 772 F.2d 214, 216 (6th Cir.1985) (citation omitted).

A.

Damsel's first cause of action alleges that Defendants violated his First and Fourteenth Amendments rights to run for political office and express his political views. The parties agree that a two-year statute of limitations applies to all of Damsel's claims. However, they hotly dispute the date or dates on which Damsel's causes of action accrued. Damsel contends that his first cause of action accrued on July 30, 1993, when he received written notice of his termination. Defendants

counter that it accrued when they informed Damsel of their decision to terminate his employment.

In *Delaware State College v. Ricks,* 449 U.S. 250 (1980), and *Chardon v. Fernandez,* 454 U.S. 6 (1981), the Supreme Court determined the point at which a cause of action for employment termination accrues. In *Ricks,* a faculty member at a state college sued under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, alleging that he had been denied tenure because of his national origin. The Court held that:

> the only alleged discrimination occurred--and the filing limitations periods therefore commenced--at the time the tenure decision was made and communicated to Ricks. That is so even though one of the effects of the denial of tenure-- the eventual loss of a teaching position--did not occur until later. The Court of Appeals for the Ninth Circuit correctly held, in a similar tenure case, that "[t]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful."

*Ricks,* 449 U.S. at 258 (citations and footnote omitted).

In *Chardon,* nontenured administrators in Puerto Rico sued under 42 U.S.C. § 1983 challenging their termination. They received written notice two to three weeks before the actual termination of their employment. The Court held that under § 1983, plaintiffs' cause of action accrued when plaintiffs received notice of their termination, not when their employment actually terminated. *Chardon,* 454 U.S. at 7-8.

Even closer to the mark is the Sixth Circuit case of *Janikowski v. Bendix Corp.,* 823 F.2d 945 (6th Cir.1987). In that case, brought under the Age Discrimination in Employment Act, Janikowski's supervisor informed him by letter that his employment with Bendix would terminate nearly a year hence if he was unable to obtain a position elsewhere in the company. *Id.* at 946. Janikowski, like Damsel, argued that his cause of action accrued much later than the date on which he received notice because the notification he received was not definite and final, given the possibility that he could continue working elsewhere in Bendix. *Id.* at 947.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

114 F.3d 1187 (Table)
**Unpublished Disposition**

Page 3

**(Cite as: 114 F.3d 1187, 1997 WL 328607 (6th Cir.(Ohio)))**

Applying *Ricks* and *Chardon*, this Court rejected Janikowski's argument:

> **\*\*3** *Ricks* held that the cause of action accrued when Ricks received notice he would be terminated, regardless of whether the letter was equivocal in holding out the possibility that he might receive tenure and thereby avoid termination. In *Kessler v. Board of Regents*, 738 F.2d 751, 755 (6th Cir.1984), this court recognized that employment decisions which are "somewhat ambiguous with respect to ... finality" still trigger the statute of limitations.

*Id.* at 947. *See also Dixon v. Anderson*, 928 F.2d 212, 218 (6th Cir.1991) (holding that a cause of action accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action).

Under the foregoing precedent, it is clear that Damsel's claim accrued when Damsel knew or had reason to know that he would be terminated for exercising his First Amendment rights. We find Damsel knew of this on June 30, 1993, when Attorney General Fisher issued the ultimatum and Damsel responded that he would not withdraw. Therefore, the district court correctly found that Damsel filed his complaint after the two-year statute of limitations had run.

### B.

In granting summary judgment for Defendants, the district court failed to consider Damsel's second and third causes of action. We do so now. Damsel's second cause of action alleges that Defendants' defamatory statements violated his right under the Fourteenth Amendment to be free from deprivation of liberty without substantive and procedural due process of law. Damsel contends that Defendants (1) publicly misstated that he had violated rules of the Attorney General's Office in running for Congress, and (2) lied about the circumstances of his termination. Whether this claim was time barred is irrelevant because Damsel failed to demonstrate a genuine issue of material fact supporting his claim that he was deprived of a liberty interest.

The threshold for proving a deprivation of a liberty interest is quite high. "To establish a deprivation

of a protected liberty interest in the employment context, a plaintiff must demonstrate stigmatizing governmental action which so negatively affects his or her reputation that it effectively forecloses the opportunity to practice a chosen profession." *Joelson v. United States*, 86 F.3d 1413, 1420 (6th Cir.1996) (citing *Board of Regents v. Roth*, 408 U.S. 564, 573-74 (1972)). Proof that the government's actions "might make [an employee] somewhat less attractive to some other employers would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of 'liberty.'" *Roth*, 408 U.S. at 74 n. 13 (citation omitted). Damsel simply has not demonstrated that Defendants so stigmatized him that he was "foreclosed" from obtaining work as an attorney.

### C.

Damsel brings his third cause of action under 42 U.S.C. § 1985(3), alleging that Defendants conspired to deprive him of the equal protection of the laws. In order to prove a private conspiracy in violation of the first clause of § 1985(3), a plaintiff must establish:

> **\*\*4** (1) a conspiracy involving two or more persons, (2) for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the laws and (3) an act in furtherance of that conspiracy (4) that causes injury to person or property, or a deprivation of a right or privilege of a United States citizen.

*Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir.1996) (citation omitted), *petition for cert. filed*, (U.S. Apr. 7, 1997) (No. 96-8543). "The plaintiff must also show the conspiracy was motivated by racial, or other class-based animus." *Id.* "A class protected by section 1985(3) must possess the characteristics of a discrete and insular minority, such as race, national origin, or gender." *Haverstick Enters., Inc. v. Financial Fed. Credit, Inc.*, 32 F.3d 989, 994 (6th Cir.1994) (citation omitted).

Damsel has presented absolutely no evidence that he was a member of a class that made him the target of discriminatory animus. His third cause of action, then, also fails to survive a motion for summary judgment.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

114 F.3d 1187 (Table)
**Unpublished Disposition**

**(Cite as: 114 F.3d 1187, 1997 WL 328607 (6th Cir.(Ohio)))**

For the foregoing reasons, the district court's grant
of summary judgment is AFFIRMED.

114 F.3d 1187 (Table), 1997 WL 328607 (6th
Cir.(Ohio)), Unpublished Disposition

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in N.E.2d
(Cite as: 2000 WL 1739230 (Ohio App. 8 Dist.))

Page 1

**c**
Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR
REPORTING OF OPINIONS AND WEIGHT OF
LEGAL AUTHORITY.

Court of Appeals of Ohio, Eighth District,
Cuyahoga County.

Patrick S. DOBOZY, Plaintiff-Appellant,
v.
GENTEK BUILDING PRODUCTS, INC.,
Defendant-Appellee.

No. 77047.

Nov. 22, 2000.

Civil appeal from Common Pleas Court Case No.
378640.

Michael D. Rossi, Warren, OH, For
Plaintiff-Appellant.

Todd F. Palmer, John R. Cernelich, Calfer, Halter
& Criswold, Cleveland, OH, For
Defendant-Appellee.

JOURNAL ENTRY AND OPINION

KILBANE.

*1 This is an appeal from an order of Judge
Bridget McCafferty granting summary judgment in
favor of appellee Gentek Building Products, Inc. (
Gentek ) dismissing appellant Patrick S. Dobozy's
claims of age discrimination in employment.
Dobozy contends that summary judgment was
inappropriate because he presented genuine issues
of material fact through direct and indirect evidence
that placed into question the reasons for his
discharge and for the failure to re-employ him. We
disagree and affirm.

From the record we glean the following: Dobozy
began his employment at Alcan, Inc. in April 1973
as an accountant and eventually obtained the

position and title of accounts payable supervisor. In
1994, the Building Products Division of Alcan, Inc.
was sold and taken over by Gentek and he then
became an employee of Gentek with the same title
and increased supervisory duties. Although his
position was in accounting, Dobozy's duties in the
Cleveland corporate offices were strictly limited to
overseeing the accounts payable functions of
Gentek's manufacturing and distribution facilities
across the United States and Canada. Different
accounting duties within the company were
performed by the three other accountants in that
department; Richard Farr, Erin Fair, and accounting
manager Roger Chang.

In 1996 and 1997, Gentek experienced financial
difficulty, sold or closed a number of its facilities,
and, by February of 1998, retained only four
hundred and forty-eight of its employees from its
1996 level of over one thousand. Dobozy aided in
the sale or closings by separating the accounts
payable of the affected facilities from those of
Gentek's remaining divisions and facilities.

In 1997, Dobozy was relieved of his supervisory
duties, either the result of an attempt to pursue a
self-management style within his group, or because
his subordinates had complained about him. Then,
in August 1997, Gentek hired Paul Belair as its
Vice President/Controller and by October 1997,
Belair also became Gentek's Chief Financial
Officer, consolidating positions formerly held by
two executives into a single office. He began a
process of restructuring Gentek's corporate offices,
which he believed no longer reflected the needs of
the down- sized company, and decided it was
necessary to decentralize some of the accounting
functions. Each Gentek facility was to perform
accounting functions specific to its own operations,
which would then be coordinated in the accounting
department in Cleveland. Accounts payable was to
be one of these decentralized functions, because
Belair believed it important that each facility have
the ability to assess its expenses on-site.

Belair intended to reduce the accounting
department from four professionals to two, retaining
the accounting manager and one accountant while
eliminating the other two accountant positions in
Cleveland. The sales and closings of some facilities
had already reduced Dobozy's duties somewhat,
although there is a disagreement as to the extent,
and Belair also considered some of Dobozy's duties

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



DEFENDANT'S
EXHIBIT
C

Not Reported in N.E.2d
(Cite as: 2000 WL 1739230 (Ohio App. 8 Dist.))

Page 2

to be clerical work that could be handled by accounting clerks rather than by a professional accountant. Between the sales and closings and the functions redelegated to clerks, Gentek estimated Dobozy's duties were reduced by as much as 75%, while Dobozy claimed because he was given new duties including the preparation of quarterly financial statements, the net reduction of his duties was as little as 10%.

Because Chang's position as accounting manager apparently was secure, Belair testified that he preferred Farr retain the single remaining accounting position, over Dobozy and Fair. Belair was not impressed with Dobozy's work on the financial statements. He believed Dobozy had expertise in a limited area but was otherwise weak in general accounting skills, believed that Farr's general accounting experience would be superior to Dobozy's, and intended to decentralize the majority of Dobozy's current work to individual Gentek facilities.

*2 Although denied by Chang, Belair claimed Chang told him that Dobozy had poor interpersonal skills, that he had been demoted from his supervisory position because he had lost the respect of his subordinates, and that Dobozy spent excessive time on personal business while at work. Dobozy claimed that Chang once told him that the two of them were dinosaurs with the company, that they were old employees with old ideas, and that new people with new ideas were coming in to take over. Chang admitted these remarks, but denied Dobozy's claim that he told him to be careful because the new management would look for incidents of misconduct upon which to base his discharge.

On February 2, 1998, then forty-six-year-old Dobozy was informed that his position had been eliminated, and he was discharged. Although the sequence of events is somewhat unclear, it appears that Fair, then aged twenty-nine years, submitted her resignation shortly before Dobozy was terminated, and he had inquired about her position prior to his discharge. Chang informed Dobozy that he would be taking over Fair's duties. It also appears that on February 16, 1998, Farr, then age forty-four years, who had been an independent contractor up to this point, was offered and accepted a full-time position with Gentek and took the remaining accountant position.

For his nineteen years and nine months of service, Dobozy received $50,137.50 in severance pay, paid in installments between February 1998 and December 1998. He was paid for twenty-two days of unused vacation time and was allowed to continue the company's health coverage at employee rates for eighteen months.

Farr, it appears, resigned shortly after accepting the job and, in April 1998, Gentek hired twenty-eight-year-old Mark Llewellyn to fill the position. Chang, then fifty-four years old, was re-assigned to a special projects group, and in February 1998 Gentek hired Julie Heid, age twenty-nine, to fill his position as accounting manager.

In May 1998, Dobozy filed suit in the Trumbull County Common Pleas Court against Gentek alleging age discrimination in employment, pursuant to R.C. 4112.14. The case was transferred to Cuyahoga County for venue reasons and dismissed pursuant to Civ.R. 40(A)(1) on March 1, 1999. On March 2, 1999, Dobozy re-filed his complaint alleging both that he had been discharged on the basis of age and that his application for employment had been denied because of his age. The latter claim was based on Dobozy's request to fill Fair's vacated position, and/or Gentek's failure to re-hire him after Farr's resignation, although it is undisputed that he did not actively seek employment with Gentek after Farr's resignation.

Discovery included the depositions of Dobozy, Chang, and Belair, as well as interrogatories to Gentek, which showed that between January 1995 and May 1998, fourteen of fifteen employees hired into Gentek's accounting department were under forty years old and that Farr was the only person over forty hired.

*3 Gentek moved for summary judgment on August 3, 1999, alleging that Dobozy could not provide any evidence that his discharge was motivated by any discriminatory intent, that Gentek had a legitimate nondiscriminatory reason for his discharge and that he neither applied for any other position with Gentek nor was qualified to perform the duties of any open position. Dobozy filed his response to the motion on September 1, 1999, and the judge granted the motion on September 9, 1999.

Dobozy asserts a single assignment of error:

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in N.E.2d
(Cite as: 2000 WL 1739230 (Ohio App. 8 Dist.))

Page 3

THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT.

This court reviews the grant of summary judgment de novo, applying the same standard as that applied by a judge. *Druso v. Bank One of Columbus* (1997), 124 Ohio App.3d 125, 131, 705 N.E.2d 717, 720. A judge may grant a motion for summary judgment pursuant to Civ.R.56(C) when the following elements are satisfied:
(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 369 N.E.2d 267, 274; accord *Zivich v. Mentor Soccer Club* (1998), 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201.

Dobozy claims that he submitted sufficient evidence to defeat summary judgment under both methods for proving age discrimination under R.C. 4112.14 The direct evidence method, contrary to its name, can utilize either direct or circumstantial evidence to show that an employer more likely than not was motivated by discriminatory intent. *Mauzy v. Kelly Services, Inc.* (1996), 75 Ohio St.3d 578, 586-87, 664 N.E.2d 1272, 1279. The crux of the direct method is not the type of evidence used, but that the evidence actually proves discriminatory intent. *Id.* By contrast, the indirect method of proof does not require direct proof of intent, but allows a plaintiff to prevail by showing that a discriminatory effect cannot be attributed to any other cause. *Id.*, at 583-84, 664 N.E.2d at 1277; *Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501, 505-06, 575 N.E.2d 439, 442-43. The Kohmeschercourt set forth the elements necessary to prove a prima facie case using the indirect method:
(1) that he or she was a member of a statutorily protected class, (2) that he or she was discharged, (3) that he or she was qualified for the position, and (4) that he or she was replaced by, or that the discharge permitted the retention of, a person not belonging to the protected class. *Id.* at syllabus.

*4 A similar analysis applies when a plaintiff claims that he applied for a job and was passed over by another applicant. R.C. 4112.14(A); *Twinsburg City Schools v. Ohio Civ. Rights Comm.* (1993), 86 Ohio App.3d 527, 529, 621 N.E.2d 591, 593. The indirect method of proof is employed, therefore, when a plaintiff is unable to establish a direct inference of discriminatory intent via direct, circumstantial, or statistical evidence * * *. Mauzy, 75 Ohio St.3d at 584, 664 N.E.2d at 1278; Kohmescher, 61 Ohio St.3d at 505, 575 N.E.2d at 442.

Dobozy points to three pieces of evidence that he claims show direct proof of discrimination; (1) that Roger Chang told him that they were both dinosaurs with the company, that they were old employees with old ideas about to be replaced by new people; (2) that fourteen of fifteen hires into Gentek's accounting department within three years were under forty years old; and (3) that Dobozy was denied the opportunity to fill Fair's accountant position, and Gentek subsequently hired twenty-eight-year-old Mark Llewellyn. We find this evidence insufficient to create a jury question concerning Gentek's discriminatory intent.

Chang's comment that he and Dobozy were dinosaurs with the company is an isolated stray remark that cannot support a discrimination claim. *Brewer v. Cleveland Bd. of Edn.* (1997), 122 Ohio App.3d 378, 384, 701 N.E.2d 1023, 1026- 27. Dobozy has not shown any evidence that this single remark was connected with the decision to remove him, especially as the decision was made by Belair, not Chang.

Although the evidence that fourteen of fifteen persons hired into the accounting department were under forty years old is relevant, its probative value is weak, so much so that a judge would be justified in considering excluding the evidence under Evid.R. 403. The evidence offered is too generalized to be presented as statistical evidence, as there is no expert analysis or attempt to show the quality and relevance of the sample used, methods employed, or effect of other variables. Although admissible as circumstantial evidence, a judge could properly find such evidence weak when unaccompanied by other evidence or expert testimony showing its significance. *Sobolewski v. Manoir Electroalloys Corp.* (1997), 120 Ohio App.3d 225, 230, 697 N.E.2d 688, 692.

We note that this is not an assessment of

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in N.E.2d
(Cite as: 2000 WL 1739230 (Ohio App. 8 Dist.))

Page 4

credibility, because Gentek has not disputed that fourteen of fifteen hires were under forty years old. This is instead an assessment of the probative value of the evidence and a judge is entitled to decide that, as a matter of law, certain evidence will be insufficient to support a jury's verdict. In this case, the judge correctly decided that this evidence, standing alone, could not support a verdict in Dobozy's favor because, even if Dobozy had strengthened this evidence with a more scientific foundation, statistical evidence alone is insufficient to support a discrimination claim. *Id.* Corroborating evidence must be offered, and Dobozy did not present any additional evidence that could buttress his claim.

Dobozy finally relies on the fact that he was denied the opportunity to fill Fair's position, and Gentek subsequently hired Mark Llewellyn, a twenty-eight-year-old accountant. He apparently argues that Llewellyn was hired to fill Fair's position but that is not a correct interpretation of the facts. According to Dobozy, on the morning Fair resigned, he asked for her position before he learned he was to be discharged. At that time, he was told that Chang would assume Fair's duties, and the record indicates that no one was hired to replace her. Belair had decided to keep one of the three accountants working under Chang, and his preference was Farr. Llewellyn was hired only after Farr resigned and about two months after Dobozy was terminated. Dobozy has not alleged that he requested re-employment with Gentek after Farr's resignation, and we cannot find evidence of discrimination in Gentek's failure to seek out Dobozy and offer him the job.

*5 Each piece of Dobozy's evidence fails on its own. The hiring of Llewellyn after Farr's resignation is not at all probative of discrimination and thus fails to provide support for the other pieces of evidence. All that remains is his circumstantial evidence concerning Gentek's hiring, which is relevant but insufficient to support a finding of discrimination, and an isolated remark made by someone other than the decisionmaker, and not shown to be connected in any way with the decision to discharge him. While each piece of evidence might have provided some support for a discrimination claim based on other, stronger evidence, taken together it is only weakly probative of discrimination. We find the sum of these two bits of evidence does not create a viable inference of

discriminatory intent under the direct evidence method.

Dobozy's claim also fails under the indirect evidence method for a reason already mentioned; one prong of his prima facie case requires a showing that his discharge allowed the retention or hiring of a person under forty years old, or that he applied for a position and was passed over in favor of a younger candidate. Dobozy's discharge permitted the retention of Farr, who was over forty at the time and only after Farr's resignation was Llewellyn hired to fill a position for which Dobozy was not even a candidate. He may have asked about Fair's job prior to his own discharge, but did not apply for any position with Gentek thereafter. Moreover, there is no evidence that he asked to be notified of open positions, or that Gentek agreed to consider him for future openings. Dobozy's discharge did not allow Llewellyn's hire, nor did Gentek pass over him in favor of Llewellyn. Dobozy failed to make out a prima facie case for age discrimination case and his assignment of error is without merit.

Judgment affirmed.

It is ordered that the appellee recover from appellant its costs herein taxed.

This court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

*6 N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R.22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E), unless a motion for reconsideration with supporting brief, per App.R. 26(A) is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in N.E.2d
**(Cite as: 2000 WL 1739230 (Ohio App. 8 Dist.))**

2(A)(1).

PATTON, P.J., and ROCCO, J., concur.

2000 WL 1739230 (Ohio App. 8 Dist.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION AT COLUMBUS

| | | |
|---|---|---|
| JEROME B. WILLIAMS | : | Civil Action No. C-2-01-681 |
| | : | |
| Plaintiff, | : | Judge Marbley |
| | : | Magistrate Judge Abel |
| v. | : | |
| | : | |
| GENERAL ELECTRIC COMPANY, | : | **AFFIDAVIT OF BRADFORD I. GREENE,** |
| et al. | : | **JR.** |
| | : | |
| Defendants. | : | |

STATE OF CONNECTICUT     )
                                ) ss:
COUNTY OF HARTFORD       )

      I, BRADFORD I. GREENE, JR., being duly cautioned and sworn, state the following based upon my personal knowledge:

      1.      I am currently employed by General Electric Company ("GE") in the Industrial Systems division.  My current job title is Manager, Human Resources Organization and Staffing. I have knowledge of and am competent to testify with respect to the matters contained herein.

      2.      In my position with General Electric, I have access to databases containing current employee information, including dates of birth.  This database is maintained by General Electric in the ordinary and regular course of its business.

      3.      According to the above-referenced database, the date of birth of David Allen is October 2, 1956, which means that as of October 24, 2000, he was 44 years old.



4.    According to the above database, the date of birth of David Koloski is December 6, 1946, which means that as of October 24, 2000, he was 53 years old.

FURTHER AFFIANT SAYETH NAUGHT.

Bradford L. Greene, Jr.

State of: Connecticut }
County of: Hartford } Plainville

Sworn to and subscribed before me, this the 27th day of August, 2003.

Notary Public

936014.1

**MARJORIE M. GIUDICE**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES FEB. 28, 2005